UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| THERESA WESTBROOK, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:23-cv-216 |
| v. | ) | Judge Travis R. McDonough |
| CHATTANOOGA HAMILTON COUNTY HOSPITAL AUTHORITY d/b/a ERLANGER HEALTH SYSTEM and ERLANGER HEALTH, | ) | Magistrate Judge Christopher H. Steger |
| *Defendants*. | ) | |

# MEMORANDUM & ORDER

Before the Court are Plaintiff's motion for attorney fees and for an order under Rule 58(e) (Doc. 97) and Defendants' motion to stay execution of judgment without bond (Doc. 99). For the reasons stated below, Plaintiff's motion (Doc. 97) is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' motion (Doc. 99) is **GRANTED**.

## I. BACKGROUND

Plaintiff brought this suit against Defendants for violating the Americans with Disabilities Act by failing to reasonably accommodate her disabilities and for violating the Family and Medical Leave Act by transferring her to an inferior position. (*See* Doc. 1-2.) The case went to trial, and the jury returned a verdict in favor of Plaintiff on the claim for violation of the ADA. (*See* Doc. 65.) The jury awarded Plaintiff $64,633.18 in backpay, $100,000.00 in compensatory damages, and $500,000.00 in punitive damages. (*See id.*; Doc. 65-1.) After resolving Plaintiff's motion for reinstatement and front pay, the Court entered judgment on March 25, 2025. (*See* Doc. 79.)

Subsequently, Plaintiff filed a motion to alter the judgment for backpay and prejudgment interest (Doc. 81) and a motion for attorneys' fees (Doc. 85). The Court awarded prejudgment interest on Plaintiff's backpay (*see* Doc. 93) and attorneys' fees (*see* Doc. 94). Defendants filed a motion to correct the judgment pursuant to Federal Rule of Civil Procedure 60(b) (Doc. 83), which the Court denied (*see* Doc. 95).

II. **MOTION FOR SUPPLEMENTAL ATTORNEYS' FEES AND FOR AN ORDER PURSUANT TO RULE 58(e)**

   A. **Attorneys' Fees**

Plaintiff has filed a motion for supplemental attorneys' fees incurred in connection with: (1) her prior motion for attorneys' fees; (2) her motion for prejudgment interest; (3) her Rule 60 motion; and (4) preparation of this motion. (*See* Doc. 97.) As the Court previously stated:

> Generally, federal courts in the United States follow the American Rule whereby each party bears his or her own attorneys' fees no matter what the outcome of the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 793 (6th Cir. 1988). An exception arises where a prevailing party has a statutory right to attorneys' fees. *See Hensley*, 461 U.S. at 429 (discussing statutory exceptions to the American Rule). "The ADA provides courts with the discretion to award a reasonable attorney's fee to the prevailing party in an action brought under the statute." *Southall v. USF Holland, Inc.*, 2023 WL 2668497, at *2 (M.D. Tenn. Mar. 28, 2023) (citing 42 U.S.C. §12205).
>
> "'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)); *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (same). A party seeking attorneys' fees under a federal fee-shifting statute bears the burden to document the fees requested. *See Hensley*, 461 U.S. at 433 (1983); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007); *Reed*, 179 F.3d at 472. The award of attorneys' fees is left to the district court's exercise of discretion within the parameters described below. *See Hensley*, 461 U.S. at 437; *Reed*, 179 F.3d at 469 n.2.
>
> The methodology for calculating attorneys' fees under a fee-shifting statute is set forth in *Hescott v. City of Saginaw*, 757 F.3d 518, 526-27 (6th Cir.

2014):

> A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the "result obtained." This involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

(quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir.1994)); *see also*, *Hensley*, 461 U.S. at 433 (holding attorneys' fees for successful litigants under federal fee-shifting statutes are calculated using the "lodestar" method of multiplying the number of hours reasonably expended by a reasonable hourly rate). There is a strong presumption that the amount of fees determined by the lodestar method is reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995).

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne*, 36 F.3d at 533 (6th Cir. 1994). In determining the appropriate hourly rate to apply, courts must consider the prevailing market rate in the relevant community for the same type of work at issue. *Adcock-Ladd*, 227 F.3d at 350; *Reed*, 179 F.3d at 473; *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821–22 (6th Cir. 2013). The "'relevant community' for fee purposes [is] the legal community within that court's territorial jurisdiction." *Adcock-Ladd*, 227 F.3d at 350; *see also Waldo*, 726 F.3d at 821. The "'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command" within the relevant community. *Adcock-Ladd*, 227 F.3d at 350.

The reasonableness of the hours expended must be considered on a case-by-case basis, and "there is no precise rule or formula" to determine how many hours are reasonable. *Hensley*, 461 U.S. at 429, 436. The attorney seeking fees must produce "billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (internal quotations omitted). However, a court is not required to comb through the attorneys' fee documentation with a magnifying glass. As the Supreme Court stated in *Fox v. Vice*, 563 U.S. 826, 838 (2011), "the determination of fees 'should not result in a second major litigation.'" (citation omitted). The court further explained that courts awarding attorneys' fees "should not[] become green-eyeshade accountants" but instead keep in mind that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.*

3

(Doc. 94, at 2–4.)

As an initial matter, Defendants do not contend that Plaintiff's hourly rate is unreasonable. (*See* Doc. 88, at 2 ("Erlanger is not challenging the rates cited by Westbrook's counsel in this matter[.]").) Therefore, the Court will accept the hourly rate as reasonable.

### 1. Fees for Initial Motion for Attorneys' Fees

Plaintiff first requests an award of attorneys' fees for work completed on her first motion for attorneys' fees. (Doc. 97, at 1.) Judgment was entered in this case on March 25, 2025 (Doc. 79), and Plaintiff filed a motion for attorneys' fees on April 24, 2025 (Doc. 85). Importantly, Plaintiff's initial motion for attorneys' fees included a request for fees incurred through March 25, 2025, and a request for fees for work conducted on the initial motion for attorneys' fees. (*See* Doc. 85-1, at 33–37.)

Nonetheless, Plaintiff's current motion for a supplemental award of attorneys' fees requests $10,798.20 "for preparing the initial attorney fees application . . . ." (Doc. 97, at 1.) Plaintiff reached this amount by taking the total number of hours worked "*through the date of judgment*, [which] was 685.6 hours" and applying some mathematical calculations. (Doc. 97-1, at 3 (emphasis added).) Defendants argue that these fees are duplicative because Plaintiff was already awarded $12,195 in attorneys' fees for its work on the initial motion for attorneys' fees. (*See* Doc. 105, at 4–7.)

As the Sixth Circuit has instructed, the methodology for calculating attorneys' fees under a fee-shifting statute is the lodestar approach. *Hescott*, 757 F.3d at 526-27. Here, Plaintiff fails to utilize the lodestar method to calculate the reasonable fees for the initial motion for attorneys' fees and, instead, uses a calculation of her own creation that takes the total number of hours work until the dated of judgment, March 25, 2025, multiplied by a percentage. (Doc. 97-1, at 3.)

4

Furthermore, Plaintiff was already awarded fees that included fees for hours work on her initial motion for attorneys' fees up until March 25, 2025 (*see* Docs. 94; 85-1, at 33–37). To use those same hours to calculate Plaintiff's current request for attorneys' fees on the initial motion for attorneys' fees is duplicative.[1] Since Plaintiff's method of calculation is not based on the lodestar method and are duplicative, Plaintiff's request for fees for work on the initial motion for attorneys' fees is denied.

### 2. Fees Incurred in Preparation of the Motion for Prejudgment Interest

Plaintiff next requests attorneys' fees for her motion to alter judgment, which resulted in an award of prejudgment interest on her backpay. (*See* Doc. 97, at 1). Specifically, Plaintiff seeks $1,732.50 (*see* Docs. 97, at 1; 107, at 3), which stems from work performed on April 1, 17, and 22, 2025 (s*ee* Doc. 97-1, at 4).

Although Plaintiff's motion to alter judgment requested prejudgment interest and an increased backpay award (s*ee* Doc. 82), the Court only awarded prejudgment interest and denied the motion to the extent it sought increased backpay (*see* Doc. 93). Plaintiff states that she "does not seek fees for the work which proved unsuccessful." (Doc. 97-1, at 4.) Defendants argue that these fees are duplicative and excessive. (*See* Doc. 105, at 8.) Defendants support their argument by citing three attorneys' fees entries in Plaintiff's initial motion for attorneys' fees for work done on the motion to alter judgment. (*See* Doc. 105, at 6–7.) These three entries are all from March 2025 and total $1,417.50 in fees. (*Id.*)

---

[1] It does appear that Plaintiffs' counsel incurred more fees after March 25, 2025 for its initial motion for attorneys' fees. (*See* Doc. 97-1.) However, Plaintiff's current request for fees for the initial motion for attorneys' fees is based on a calculation that used the hours worked "through the date of judgment" and not hours worked after the date of judgment. (*See id.*)

5

Here, the attorneys' fees for the motion to alter judgment are not duplicative. The work was conducted in different months, and the time entries' descriptions are varied. (*See* Docs. 85-1, 97-1, 105.) Furthermore, the requested fees are not excessive. Plaintiff's attorneys represent that they worked for a total of 7.8 hours on their motion for prejudgment interest. (*See* Docs. 85-1, 97-1.) The time entries corresponding with these fees specifically relate to the prejudgment interest issue, the successful claim, and not to the request for increased backpay, the unsuccessful claim. (*See* Docs. 85-1, 97-1.) The hours spent on the motion to alter judgment for the prejudgment interest is reasonable. Accordingly, the Court will grant the attorneys' fees for $1,732.50.

### 3. Fees and Research Expense for Opposing Defendants' Rule 60 Motion

Plaintiff also requests attorneys' fees in connection with opposing Defendants' Rule 60 motion. (Doc. 97-1, at 4.) Specifically, Plaintiff seeks $21,462.50 for 42.5 hours of work and $309.00 for research-related expenses. (*Id.* at 5.) Although Defendants admit their Rule 60 motion "involved some novel issues," they argue that the amount of time spent on the response was excessive. (Doc. 105, at 8.)

The amount of time expended to research and draft an opposition to Defendants' novel Rule 60 motion is reasonable, especially considering that Defendants' motion involved novel issues of law. Furthermore, Plaintiff's opposition was successful (*see* Doc. 95), and no adjustment is needed. In the context of the amount at issue from the judgment, this figure is reasonable. Accordingly, Plaintiff's request for attorneys' fees and expenses related to the opposing Defendants' Rule 60 motion is granted for a total amount of $21,771.50.

### 4. Fees for Preparing this Supplemental Fee Application and Court Costs

6

Lastly, Plaintiff requests $735.00 in attorneys' fees for preparing the instant motion for supplemental attorneys' fees and $167.80 for unopposed court costs. (*See* Doc. 97, at 2.) Defendants do not contest the award of these fees and costs. (*See generally* Doc. 105.) Accordingly, Plaintiff is granted $735 in attorneys' fees for the instant motion and $167.80 for court costs.

B.  **Plaintiff's Rule 58(e) Request**

If a timely motion for attorneys' fees is made under Federal Rule of Civil Procedure 54(d)(2), Rule 58(e) allows a time for appeal to be extended by the court "order[ing] that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59." Fed. R. Civ. P. 58(e). In Plaintiff's motion for supplemental attorneys' fees, she requests that her time for appeal be extended pursuant to Rule 58(e). (*See* Doc. 97.) However, both Plaintiff and Defendants have already filed notices of appeal in this case. (Docs. 101, 103.) Therefore, the motion will be denied as moot.

III.  **MOTION TO STAY JUDGMENT**

Defendants have moved to stay the Court's judgment pending resolution on appeal. Under Rule 62(b), after a judgment is entered, "a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). Rule 62 serves as a protection for both parties. It allows the "appellant to obtain a stay to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal," while requiring appellant to "to post the bond to provide both insurance and compensation to the appellee." *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (quoting *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979)) (internal quotations omitted). However, a court may grant a stay without bond if "the defendant's ability to pay the judgment is

7

so plain that the cost of the bond would be a waste of money." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (citation modified). The burden is on the moving party "to objectively demonstrate the reasons" for waiving bond. *Hamlin*, 181 F.R.D. at 353 (quoting *Poplar Grove*, 600 F.2d at 1191)).

Defendants argue that no bond is necessary because its "net operating income has not been less than $34 million and has averaged $44.2 million over the last 5 years," which is several times more than Plaintiff's award. (Doc. 100, at 4–5.) However, Plaintiff opposes Defendants' request to waive bond citing a recent *qui tam* action against Defendants, which Plaintiff argues puts her judgment at risk. (*See* Doc. 106, at 1.) In response, Defendants argue that Plaintiff's argument is speculative on the result of the *qui tam* case, which is "likely [to] continue for years to come[.]" (*See* Doc. 108, at 2.) Defendants, relying on data published by www.uscourts.gov, argue that "in all likelihood, the appeal of this matter may be over before there is even a trial date in [the *qui tam* case]." (*Id.*) Since Defendants have a strong financial background and the appeal in this case should be resolved before a judgment would come from the *qui tam* action, Defendants' motion to stay execution of judgment and waive supersedeas bond (Doc. 100) is granted, and the Court declines to interfere with the typical standards governing judgment liens.

IV. **CONCLUSION**

For the reasons stated above, Plaintiff's motion for supplemental attorneys' fees (Doc. 97) is **GRANTED IN PART** to the fees and expenses associated with Plaintiff's motion for prejudgment interest ($1,732.50), opposition to Defendants' Rule 60 motion ($21,771.50), motion for supplemental attorneys' fee ($735), and court costs ($167.80), and **DENIED IN PART** to the fees for the initial motion for attorneys' fees. The total amount of attorneys' fees and costs awarded to Plaintiff is $24,406.80. Plaintiff's motion for an order pursuant to Rule

8

58(e) is **DENIED** as moot (Doc. 97).  Defendants' motion to stay execution of judgment without bond (Doc. 99) is **GRANTED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**